OCTOBER AND NOVEMBER TERM, 1881, No. 170.

## Patterson *versus* McCarty.

1. In an action by a real estate broker to recover commissions for negotiating a loan on mortgage, there being evidence that defendant was acting in a representative capacity, the plaintiff may recover, without showing that he expressly declared to defendant that he would look to the latter directly and individually, and that defendant agreed to be directly and individually bound.

2. The fact that plaintiff has declared against the defendant, as administrator and trustee, upon a contract made by defendant, is no reason why a recovery should not be had against him *de bonis propriis.*

ERROR to the Court of Common Pleas, No. 1, of *Allegheny County.*

Assumpsit by Ambrose A. McCarty against T. H. Baird Patterson, administrator cum testamento annexo, and trustee under the will of Joseph Patterson, deceased, and trustee of Elizabeth H. Haseltine *et al.*, to recover commissions, as a broker, for alleged services in negotiating a loan of money.

The first count of the narr. set forth that " the said defendant, as administrator and trustee as aforesaid, on the 2d day of July, A. D. 1879, at the county aforesaid, was indebted to the plaintiff in three hundred and twenty dollars for his services as a broker, in negotiating a loan of a large sum of money, etc.," with a promise to pay, and breach.

The second count set forth that " the said defendant, administrator and trustee, as aforesaid," was indebted to the plaintiff for work and labor.

The third count set forth that " said defendant, administrator and trustee as aforesaid," accounted with the plaintiff for money due and owing.

Plea non assumpsit, with leave, etc.

Upon the trial in the Court below, the following facts appeared :

Joseph Patterson, a citizen of Philadelphia, was the owner of a valuable property in the city of Pittsburgh. He having died leaving a will, the parties in interest determined to improve the property. The defendant, T. H. Baird Patterson, took out letters of administration cum testamento annexo in Philadelphia.

McCarty, the plaintiff, testified that he was a broker, residing in Allegheny, and that he met the defendant in Pittsburgh in December, 1878.

" We had a conversation, and went back to his office, and talked about it, and he said he wanted the money, and talked about the good property and all that; and I told him I thought I could get him the money, and then I went back and we had several conversations on the matter, and I wrote

[Patterson *v.* McCarty.]

a letter to the Allegheny Cemetery Company, Dr. Spear, and Dr. Spear called in at my office, and said he thought they would have the money and could give it, and I then saw Mr. Patterson and got the details pretty generally, and we talked about commission and various things in relation to it, and I told him my commission would be one-half of one per cent., and he asked me if that meant one-half of one per cent. a year. I told him, no; that meant on the face of the money half a per cent.; the usual commission was one per cent., but I would do it for one-half of one per cent. And we had other conversations on the matter; and finally he made up his mind he would take the money, and I went to see Mr. Harper, of the Bank of Pittsburgh, and had a talk with him, and took Mr. Patterson there and introduced him, and the money was given to him."

Upon cross-examination, he testified:

He said he wanted the money, and wanted to build these buildings; wanted to get it on the best terms possible. . . . I always supposed he was the trustee; that he had full authority. . . . I knew, in the first place, that the property, on which the mortgage was proposed to be placed, was not Mr. Patterson's individual property. . . . Afterwards, I did understand he was acting for the owners of the estate.

Plaintiff offered in evidence a mortgage from Charles F. Haseltine *et al.* to the Western University upon the above-mentioned property.

The defendant testified:

Plaintiff sent me a postal card to the effect that he understood that the Patterson estate, or Patterson heirs, wanted some money for these buildings, and for me not to take it from anybody till he saw me, as he had the money for us. I first saw him in my office. He told me that he had a party that had this money, and that he was very anxious that I should take it, or that the estate should take it; was talking in the whole conversation in regard to the heirs and the estate, and I told him that I was perfectly willing to take the money from any person who would furnish it at six per cent. I told him that under the law, and my appointment and duties as trustee, that I could not give away more than six per cent. interest, and that I wanted to make it for a long period, about ten years, and explained to him the nature of the proceedings in the Orphans' Court, and the security that would be given, and he was very well satisfied with them. I told him that any amount of money he could make under six per cent. it did not make any difference to me; that legally I could only give six per cent., and I would be very glad if he could get the money and make a good commis-

[Patterson v. McCarty.]

sion on it from his party. At the time I first saw him the authority had not yet been given by the Orphans' Court. The proceedings had not been begun. I told him distinctly that the matter was a proposed arrangement to improve this property, and that the application had to be made to the Orphans' Court, which would have to authorize it, and that I had no authority except as it would be delegated to me under the proceedings. I think I showed him the papers. He came back after seeing his party, and reported that they were perfectly willing to loan us the money, but they were not willing to pay him any commission. I told him that that ended the matter. I could not arrange for any commission at all. He came back again and asked me whether he could not arrange it in some way by which his party could furnish me the money in instalments of say $10,000 at a time, on thirty days' call, as the buildings progressed. In that way I would save a good deal of interest, and he thought it would be to the advantage of the estate, and that the Court would sanction any such arrangement as that. I told him that would save considerable interest, if he could make an arrangement of that kind, and that if he could I would be willing to take the risk of getting the Court to pay him a small commission. We then talked the matter over, and I asked him in case I did arrange that, how much commission he would expect, and he said a half per cent. He agreed to that. He made an appointment with us to meet John Harper, who, he said, was chairman of the Finance Committee of the Allegheny Cemetery, and he could say whether or not the Cemetery could loan the money in the way arranged. Mr. Harper said the Allegheny Cemetery had no such funds to loan at all. Mr. Harper had known me a long time. He said I could bring the matter before the Finance Committee of the University. From that time on I conducted the negotiations which resulted in the mortgage. The loan was not given on the basis of being paid over in instalments. They said they had never heard the subject broached by McCarty or any one else.

Defendant offered in evidence the record of the Orphans' Court, December Term, 1878, No. 251, in the matter of the application of Elizabeth H. Haseltine et al. for the mortgaging of the estate described in the mortgage in evidence.

Counsel for defendant asked the Court to charge, inter alia :

1. That the trust created by the Orphans' Court of Allegheny County, Pennsylvania, at No. 251, December Term, 1878, given in evidence, was such that an action to collect as against the trust fund for expenses incurred in

[Patterson *v.* McCarty.]

connection therewith could only be sustained in said Orphans' Court.

2. That if the jury believe that the plaintiff knew at the time he first began his negotiations for the proposed loan, that the taking of the said loan was conditional upon the authorization thereof by the Orphans' Court of Allegheny County, then in the absence of an express stipulation on his part that the defendant should be personally liable to him for such services as he might render, he can only recover against the fund such reasonable amount as the Orphans' Court might award to him, and said Orphans' Court is the only forum in which he could maintain his claim.

3. That if the jury believe that the plaintiff knew that the defendant was only acting in a representative capacity in connection with the Patterson heirs, to sustain their mortgage as against such contingent interests as might possibly arise under the will of Joseph Patterson, deceased, then in the absence of positive evidence that he dealt directly with the defendant on defendant's own responsibility to the exclusion of the Patterson heirs (mortgagors), he cannot recover.

4. That under all the facts of this case, unless the jury is satisfied that the plaintiff expressly declared to the defendant that he, for his services to be rendered, would look to him directly and individually for compensation, and the defendant agreed to be directly and individually bound, plaintiff cannot recover.

The Court refused these points, and charged the jury, *inter alia*:

[It seems to be clear that occupying the position the defendant did as the administrator and representative of this estate, the party in whom the title was, and through whom these legal acts were to be done and accomplished by which this money was to be raised, he became personally liable for any negotiation that he made when he undertook to act for the benefit of those he represented, without he expressly, or at least by a fair implication, indicated to the party with whom he was dealing that he was not personally liable for any expense that might arise to him, or any compensation that might accrue to him by virtue of what he did. Of course if there was a contract to the contrary, that would relieve him from personal liability, but in the absence of any such agreement, and there is none pretended here so far as I have understood the case, the law would first vest the responsibility or cast it upon the defendant,] and therefore, if there is any liability in anybody to pay, under the circumstances and facts of this case, it would fall upon the defend-

[Patterson *v.* McCarty.]

ant, and if he is compelled to pay, he may or may not have his remedy over upon those he represented. This, however, is a matter for the future, and is not involved in this case. . . . .

We may say, in a general way then, that so far as this case is concerned, if you believe the testimony of plaintiff, which is substantially that he made an arrangement—a personal arrangement, too, is the natural inference from what he says—with Mr. Patterson, by which, if he procured this money for the benefit of this estate, he was to be compensated, and it was subsequently procured by Mr. Patterson, through his instrumentality, then whether or not the plaintiff finally consummated the contract, or simply brought the parties together, so that through making use of the information and intelligence put into the hands of Mr. Patterson, the loan was accomplished, as it finally was accomplished, the defendant is bound to pay the amount agreed upon, which is admittedly a very reasonable compensation.

But that is only one side of the case. As I said, if you believe those facts, you ought to find a verdict for the plaintiff. But the defendant says that which, if true, makes a complete defence to everything alleged on the part of the plaintiff, and that allegation is this: That the express understanding between the plaintiff and the defendant was that this money was to be obtained in a certain way; that the agreement was that it was to be procured for the defendant in instalments from time to time as it might be needed, and that interest was to run only from the time each instalment was obtained, and that it was also agreed that if the money was not obtained in that way Mr. McCarty was to have no commission or compensation for his services.

It is clear that the money was not obtained in that way, and if that was the contract between the parties, of course by that contract they must stand or fall, and the plaintiff could not recover. In other words, he couldn't turn around now and claim commissions for doing that he expressly agreed he would not claim compensation for. Perhaps that is the great question in the case: Was the agreement such as Mr. Patterson alleges it was? If it was, he is entitled to your verdict. But you must determine under all the facts in the case, whether it was or not. If you believe that the plaintiff was employed as the agent in this matter to secure this loan, you will determine whether or not it was the interposition of the plaintiff that enabled the defendant to get the money at the time and place he did, and although it may have been understood at the time between the plaintiff and defendant that the loan was to be obtained in instalments,.

[Patterson *v.* McCarty.]

yet without there was an agreement on the part of the plaintiff that if it was not thus obtained, he would charge nothing, he would be entitled to fair compensation for his services in the absence of any agreement as to fees, and if there was an agreement to pay fees, he would be entitled to the amount agreed upon.

[The law presumes a man entitled to compensation when he has done work for another, and the burden of proof is thrown on the party sought to be charged, to show a state of facts which will relieve him from making compensation or paying the amount of the claim, and without his defence is reasonably established before a jury, their verdict ought to follow the presumption of law; but of course they are to take all the evidence together, weigh it carefully, and render a verdict in accordance with what they think to be the weight of it.    This you will do in this case.]

I will suggest again that if you believe there was an arrangement through which this money was obtained, and the plaintiff was the means of enabling the defendant to obtain it through Mr. Harper—was the inducing cause, was the one through whom the loan was finally accomplished,— he is entitled to his compensation, although the terms may have been changed from those originally suggested, without it is established reasonably by the weight of the testimony, as claimed by the defendant, that there was to be no charge unless the money was obtained payable in instalments, and in such a way as the jury have heard indicated, so that interest would only run from the time that each instalment was obtained.    It is beyond question that it was not so obtained, and if that was the agreement, the plaintiff has no standing in Court, and should not, whatever his services might otherwise be worth, be allowed to recover.

[*By the Eighth Juror :* Suppose the jury believe the plaintiff in his testimony, when he says, " If you don't pay the percentage you must not take this money, I can get it elsewhere ?"

*By the Court :* That would have no effect if you believe the understanding was previous to that, that he was to have no compensation in case it was not obtained payable in instalments.    Having worked with that understanding, he could not subsequently change it by any declaration.    But this is evidence tending to show in connection with the balance of the testimony what the fact was in reference to this disputed matter between these parties, one alleging the contract to be one way, and the other alleging it to be the other way.

Counsel for the defendant excepted to the answers to the points and to the charge.

May 11th, 1881, verdict for the plaintiff for $345.44, on which judgment was entered.

Defendant then took a writ of error, assigning as errors, the answers to the points, the portions of the charge within brackets, and that the counts of the declaration are conflicting and require different judgments.

*J. S. Ferguson* for plaintiff in error.

A reference to the first count of the declaration, it seems to us, establishes clearly that the plaintiff did not declare against, or expect to hold the defendant personally. That count in substance charges, that the "defendant, as administrator and trustee," was indebted to the plaintiff for his services in negotiating the loan at the instance and request of said "Patterson, trustee and administrator as aforesaid."

It may be that the language of the other counts, omitting, as they do, the word "as," and charging the indebtedness and promise to have been by Patterson, "administrator and trustee," may be construed to amount to counts against him personally, upon the principle that in them, the words "administrator and trustee" were mere words designating and describing the person sued, and therefore to be disregarded as surplusage. But even if this be so, then the defendant in error is in the position of having joined the counts requiring different judgments, and this defect is certainly not cured by the verdict: Strohecker v. Grant, 16 S. & R., 237.

The case was simply a demand upon a trustee for a portion of the trust funds.

Where a person contracts on behalf of himself and others, and this is known to the other party, he cannot be sued alone for the breach: Stover v. Metzgar, 1 W. & S., 269; Corbet v. Evans, 25 Penn. State, 310; Rowan v. Rowan, 29 Penna. State, 181.

*Thomas M. Marshall* and *Kennedy & Doty*, for defendant in error.

In all cases of promises, express or implied, made to or by an administrator after the death of the intestate, the action lies by or against the administrator personally: Grier v. Huston, 8 S. & R., 402; Beeson v. McNabb, 2 Barr, 422; Solliday v. Bissey, 2 Jones, 347.

The description of this character may be treated as surplusage: Filson v. Dunbar, 2 Casey, 475; Wilmarth v. Mountford, 8 S. & R., 124; Geddis v. Irvine, 5 Barr, 508; Com-

monwealth *v.* Haffey, 6 Barr, 348; Miltenberger *v.* Schlegel, 7 Barr, 241; Bixler *v.* Kunkle, 17 S. & R., 298.

If the declaration was defective it might have been amended, and the Court will not reverse: Shoenberger's Executors *v.* Zook, 10 Casey, 24. The Court of Common Pleas had jurisdiction: Brown's Appeal, 2 Jones, 333; Stearly's Appeal, 3 Grant, 270; Apple's Estate, 2 Phila., 171; Anderson *v.* Henzey, 9 Phila., 14; Seibert's Appeal, 7 Harris, 49; Wapple's Appeal, 24 P. F. Smith, 100.

NOVEMBER 14TH, 1881.—PER CURIAM: The law was correctly laid down by the learned Court below in their answers to the defendant's fourth point, and the question of fact in the case was fairly submitted to the jury. The other assignments contain no material questions, and there is no doubt that the plaintiff, having declared against the defendant as administrator and trustee, the contract having been made by him was no reason why a recovery should not be had against him *de bonis propriis*.

Judgment affirmed.